is Aluminum Recovery Technologies against Ace American Insurance. Mr. Young. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Douglas Young on behalf of Aluminum Recovery Technologies, Inc. We're here today regarding our appeal of a partial summary judgment grant by the District Court. We've asserted that grant was in error, that there was credible evidence creating a genuine issue of material fact, and that this case should have been allowed to proceed to trial on these two remaining issues. As we explained in the brief, the majority of the case has been resolved by settlement. These two issues were not resolved because they were granted summary judgment, and we then appealed after the resolution of the remainder of the case. What we're talking about here, Your Honors, is an insurance policy issued in Indiana. Indiana law applies. It's a slightly unusual policy in that it's an all-risk policy tailored to foundries and metal smelting operations. What brings us here is a somewhat unique exclusion for refractory. Refractory and catalyst is not covered under the policy, and the reason for that is refractory and catalyst are often used up in the smelting process. They will wear out and need to be replaced in the smelting operation. So this exclusion was intended to apply to situations where natural wear and tear, the refractory goes away and has to be replaced. But there's an exception to that exclusion for 13 enumerated events. Riots, lightning. The one that brings us here is explosion. In the briefing, you can see there was, at the district court level, the district court judge relied on the insurance company, Aces, expert witness, who did not believe that an explosion occurred, but he didn't interview any of the people operating the equipment at the time. But in the causal chain, I think the district court found a lack of proffered evidence that would have allowed a reasonable jury to find that the explosion, that the sequence basically is explosion and then damage to the refractory lining as opposed to other problems that may have been there. Everybody seems to think it was bad welds and the temperature of the equipment. You have to come forward on summary judgment with the evidence that you think the jury is going to credit. Yes, Your Honor. And I believe we did so in that it ultimately comes down to a chicken or egg type of analysis, which came first. It's not a question of which came first. It's a question of what caused what. The language in the policy speaks of damage, quote, resulting from, close quote, an explosion. So let's assume an explosion came first. If it didn't cause the damage, it's not covered. What is the best evidence in this record that an explosion caused the damage to the refractory lining? Well, Your Honor, I believe the best evidence of that is Mr. Sayles, the party that put the refractory in initially and then ultimately replaced the refractory. But his opinions were expert opinions that you didn't disclose. That is true, Your Honor. They were fact witness opinions. He was the person that put the refractory. No, I didn't say they were fact. I'm sorry. Mr. Sayles' opinions about what caused it, we can talk about whether or not those were dispositive or not, but he was not disclosed as an expert, and those opinions about the cause were expert opinions. That's why the court didn't consider his testimony. You are correct, Your Honor, although what I was going with there was Mr. Sayles' knowledge of how this refractory, basically a cement, works. But that's exactly, I mean, it's the come-ho-tire type of expert testimony. Somebody who's just very experienced in the field, who knows, as you just said, how these things are put together and how they work. But they count as experts every bit as much as some professor from an engineering school would count as an expert. The Supreme Court's been very clear about that. And he wasn't disclosed that way, so he couldn't offer, you know, this isn't within the jury's ordinary lay knowledge. It's not like jurors sit there with these refractories. It's a complex business that you're talking about. Well, Your Honor, I would respond to that by Mr. Godoy, the expert for ACE, he did in his deposition testimony acknowledge that an explosion can damage the refractory. Here... But that doesn't give you causation, because you have to show that, in fact, this explosion did cause the refractory lining. And, Your Honor, for that, what we're using for causation is the time element of, we have an explosion, we have a leaking furnace within a very short period of time. That comes back to the problem, though, of did the explosion cause the problem, or did something else cause it? And there's evidence in the record that it could have been something else, and that's why I'm saying you needed, you couldn't just sit there and say, oh, maybe the jury wouldn't believe that. You have to, you have the burden of proof. You have to show the court what's the evidence, if there were to be a trial, that you would point to, and you need more than just this guy saying, I heard an explosion, because there's evidence in the record that indicates that could have been after the leak has already occurred and the aluminum is leaking away through all of this and hits the concrete and makes the very loud noise. Well, Your Honor, with regard to that, Mr. Godoy did testify that he believed the explosion was molten metal hitting the hot concrete, or the cold concrete, pardon me. The cold, yeah. However, there was no testimony, the witnesses who are operating the furnace, one of them stands near where the leak was. They did not testify that there was any explosions coming from the cement. But the leak has to have started inside. I mean, it takes a bit of time to get all the way down to the concrete. Well, Your Honor, that would be true, although the person who was standing near where the leak was would presumably have seen the molten metal exploding off the concrete. They were not far away. That what the testimony from the supervisor, Mr. Mosley, was, was that he heard a large explosion and he did candidly concede that there are small explosions, not infrequently in these refractory type operations, small popping, which he- More like popping things, yeah, from the moisture, right? Yes, and this was February. What they do is they store aluminum shavings, for the most part, outdoors. It gets wet, icy, snowy. It's brought inside. It should be allowed to dry and de-moisture itself, for lack of a better term. And then it's put into the other molten metal in the refractory. If it's put in when it's wet, it would be akin to throwing water into a pan of grease. There's going to be an explosion. And that's what he testified, Mr. Mosley, had occurred, and that within an hour, leaking was observed. And it's our position that the explosion causes both the refractory to fail, which is the concrete- What is your position based on? Your brief reads as if you're arguing something like res ipsa loquitur, but this is far too technical to say the event speaks for itself. Was there any causation evidence that the district judge didn't exclude? Well, Your Honor, I believe there was, and that would be the circumstantial evidence that we have. And I believe we've cited in our brief that circumstantial evidence can be used in rebuttal of a motion for partial summary disposition. Circumstantial evidence showing causation how? That we have an explosion. We know that the refractory is made of concrete, for lack of a better explanation, and it has a weld underneath it. Both an explosion can cause the weld to fail. It could have been a bad weld, and still fit within our theory of what happened here. The explosion caused the bad weld to fail, the concrete cracked, the material- How does this show causation? As you know, in logic, there is a logical fallacy that goes by the name of post hoc ergo proctor hoc, and it sounds like that's what your argument has devolved to. One thing follows another, therefore one thing caused another. And it's just a fallacy. You need some evidence. That's what I'm asking you for. Is there any evidence? Well, Your Honor, I guess the evidence I would suggest to the court is this was a brand new furnace being loaded for the first time. That there is no evidence in the record other than Mr. Godoy saying that he doesn't believe an explosion occurred, and he doesn't believe that an explosion could have caused this. All right. I think we have your position. Thank you. Your Honor, if I may move on to the next argument. No, your time has expired, Counselor. Oh, I'm sorry, Your Honor. Mr. Orlando. Thank you. Good morning, Your Honors. May it please the court, Tom Orlando for Appley Ace. There is no evidence on causation. I think in the reply brief of Art, there's a very telling statement that Art proffered testimonial evidence of a large explosion immediately preceding the noted failure of the wells in the area of the furnace's recent expansion, the noted failure. We take as a given that there was an explosion. That's how the testimony came in. The district court had to accept that, that Mr. Mosley heard this explosion. At some point after the explosion, he noted leaking aluminum. Can I ask you a question about the way this policy is worded? It's a little bit funny. It excludes any refractory lining, as we know, except for damage directly resulting. Then it doesn't say damage or destruction directly resulting from, for example, explosion. It says resulting from the perils of fire, lightning, windstorm. Is perils just superfluous? What are the perils of explosion as opposed to just explosion? Perils is an insurance term of Art. I think all of those things that are listed in that exception are perils. So what is perils of Ed? Maybe not too much. Okay. If I can just mentally delete it, it will scan a little better for me. So what Mr. Mosley could not do, there is no testimony by Mr. Mosley, by any of the workers, as to when the leaking actually started. And so they don't have that causation element. What Mr. Godoy did, who's ACE's expert, is to explain how what would have happened if it really was an explosion that caused this, why he doesn't think this was an explosion. But the burden was not on ACE to even go that far. The burden here was on Art to establish that an explosion caused the failure. And there simply is no evidence of that. Mr. Sale, who is quite knowledgeable, who was not disclosed by them as an expert but clearly is knowledgeable, for early on he said it was defective welds. Even before ACE's Mr. Godoy reached that conclusion, Mr. Sale immediately said that it was the defects within the weld. So the notion is they pour this stuff in and the welds are bad and it splits apart and the leaking starts. Yes. Before any kind of explosion happens. That's right. And a picture is worth a thousand words if you look at the photographs. I did. It's a surgical line where the weld is. A common layperson could probably look at that and say that's not an explosion. Well, I must say, I don't think your common layperson knows what explosions do. Explosions create overpressure. And overpressure might cause a weld to fail in a straight line. That's an engineering question. It's not something you would ask the proverbial man on the street. I'm a little troubled that both sides seem to be thinking that we lawyers know enough about engineering to have a view on this. I actually agree with that, Your Honor, and I would say that's not ACE's position. Our position is that you need to have an expert for this. My only point is if we are to credit Art's argument that a layperson could understand any of this, I think a layperson would not look at that picture and think that's an explosion. But that goes to your point that you would need an expert or two experts to argue to a layperson as to why that may or may not be an explosion. And that simply isn't here. And Mr. Sale himself, that's not the conclusion he drew early on in the course of the litigation. He said, well, an explosion could have caused this. He never opined that an explosion did cause this, did he? That's correct. He did not. I think he was trying to help Art, who's a customer. He gave a very definitive position early on that it was defective welds, a defect in the weld itself that he did not characterize as an explosion at the time. He later said it could have. Some other company was actually responsible for the welding, is that correct? Yes, there was a third party that did the welding. It was not Mr. Sale's company. Yeah. And whether Mr. Sale is an expert or a layperson, the testimony could have is speculation, and it wouldn't come in under either of those scenarios. And so there simply isn't any evidence from which a jury could conclude that an explosion caused this failure. I want to move on to the negligence aspect of this, which Art's reply brief really did not address at all. This is a contractual relationship between Art and Ace, and somehow Art has gone outside of the contractual relationship to argue that, well, my client committed negligence when it did the post-loss testing. In our brief, we pose the question, well, where's the duty and where's the breach? And that wasn't answered in the reply brief. There's been no duty identified by Art for the tort of negligence. This is not a special relationship that the law recognizes like an innkeeper and a common carrier. That doesn't exist. We didn't, Ace did not possess custody or control of the property. And, in fact, the party- So your position is they'll tux in under the contractual duties that existed between the parties. Exactly. And the contractual relationship was such that after a loss, yes, Art had to cooperate. Ace had a right of subrogation. Had they pursued subrogation against the welder, that also would have benefited Art. They would have gotten their deductible back. So it actually would have benefited both parties. In doing this testing for that purpose and in acknowledging that things can happen when you do testing, there was a protocol that said, we're going to do destructive testing, and Art signed the protocol. It's hard to find a duty in negligence or a breach in negligence when contracting parties actually work through under their contract how they're going to perform. What about its argument that it would not have removed all the refractory lining, that it just would have repaired it? Right. So that's contradicted by Mr. Sale again, who said early on before the testing was started, that all of the refractory was going to have to be replaced. But it's summary judgment. So we have to view the light, everything in the light most favorable to that. Yes. But, I mean, his testimony was that the refractory would have to be replaced because he couldn't give a warranty the way it was from the damage. It's acknowledged that the explosion, excuse me, it was acknowledged that the failure did not damage all the refractory, but it would all have to be replaced in order to clean out and extract the damaged property. He said that early on. But that gets back to the breach. I mean, even assuming that that could be the case, that there's a fact issue on that, there is no duty and there is no breach. There had a protocol that there would be destructive testing. So how could ACE reach a duty that would give rise to this injury when ART agreed to allow for the destructive testing that was going to remove more of the refractory? I think those are the two main issues, which are the causation issue and that there cannot be duty in a negligence context. So unless the court has any further questions, we ask for affirmation. Thank you very much. Counsel, the case is taken under advisement.